IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA, )
)
        Plaintiff, )
)
vs. ) Case No. 01-CR-050-001-C
)
JIM D. SHOFNER, )
)
        Defendant. )

F I L E D
SEP 0 5 2001
Phil Lombardi, Clerk
U.S. DISTRICT COURT

## DEFENDANT'S SENTENCING MEMORANDUM

On May 30, 2001, Jim D. Shofner entered a plea of guilty to a one-count Information charging the Defendant with conspiracy under 18 U.S.C. § 371. The plea was pursuant to plea agreement with the United States Attorney's Office for the Northern District of Oklahoma. That plea agreement is the product of plea negotiations with the United States Attorney's Office which commenced as soon as the United States Attorney's Office indicated that it had intentions to charge Mr. Shofner with federal crime(s). This matter now comes on before the Court for sentencing purposes.

## PERSONAL BACKGROUND

Mr. Shofner will be 58 years old on September 12, 2001. He has three adult children and his 36 year marriage ended in divorce in January of this year. Mr. Shofner has been practicing law in Tulsa, Oklahoma, continuously, and without a blemish on his record for over 33 years. He has expeditiously completed his plan to wind down and terminate his law practice since entering into his plea agreement. Within ten days of sentencing in this case, Mr. Shofner's law license will be

suspended without objection from him. Mr. Shofner will stipulate to his conduct in its entirety related to the grounds for suspension of his law license and will simply await a determination by the Oklahoma Supreme Court on the duration of his suspension from the practice of law. Mr. Shofner has very little by way of assets accumulated. Therefore, upon completion of service of sentence in this case, Mr. Shofner will be a man of approximately 60 years of age embarking on a new life and career as best he can in light of the hardship that will be inflicted upon him by virtue of this case resulting from his own conduct.

Mr. Shofner takes full responsibility for his own actions and is prepared for sentencing by this Court. The balance of Mr. Shofner's personal background information is adequately reflected in his Presentence Report.

## **OFFENSE CONDUCT**

Mr. Shofner has plead guilty and is guilty of conspiring with Barbara Tillman (then Hale) to commit fraud upon Ms. Tillman's creditors, including the Internal Revenue Service, through a bankruptcy proceeding. Ms. Tillman was desirous of hiding approximately $121,000 of her assets from her creditors for her own benefit. She paid Mr. Shofner the total sum of $600 to provide representation in the bankruptcy proceeding and both Ms. Tillman and Mr. Shofner participated in the scheme knowingly.

However, as evidenced by tape recordings selectively made by Ms. Tillman and Ms. Tillman's own testimony under oath, she was the leader of the conspiracy and encouraged and induced Mr. Shofner to assist her, all for her own financial benefit. As part of the conspiracy, Ms. Tillman caused and allowed the proceeds from the sale of a house in the approximate sum of

2

$121,000 to be deposited into Mr. Shofner's trust account. Thereafter, Mr. Shofner disbursed all of that money back to Ms. Tillman save and except the $600 received as an attorney's fee. On August 16, 2001, at her own Sentencing Hearing, Ms. Tillman testified as follows:

> Q. Do you recall his [Shofner's] reluctance to run that money through his trust account?
>
> A. Yes, I believe so, yes.
>
> Q. And you encouraged him to do that, did you not?
>
> A. Yes, I did. Yes, I did.
>
> Q. And why did you do that?
>
> A. I was trying to -- to find a way to get the checks cashed, I believe. I'd have to listen back on the tapes, but --
>
> Q. You were concerned that anybody else would find out if you had to have someone other than Mr. Shofner cash the checks; is that right?
>
> A. Yes.
>
> Q. Did Mr. Shofner at one point attempt to not be your lawyer on the bankruptcy case?
>
> A. Yes.
>
> Q. And what was your response?
>
> A. I don't remember specifically, but I wanted him to -- I felt like that we had gotten into this big mess and I didn't want him to abandon me at that point.
>
> Q. And so you encouraged him to also falsify your bankruptcy case and its schedules; is that right?
>
> A. Yes.

Transcript of Proceedings in Tillman's Sentencing, August 16, 2001, filed August 24, 2001, Tr. p.

3

50, l. 22 through p. 51, l. 19.

Ms. Tillman was the co-conspirator with the financial interest in the outcome of the conspiracy, she was the primary player in the conspiracy, she was the instigator and the motivator in the conspiracy.

It should additionally be noted that in paragraph 10 of the Presentence Report, it states that,

> ... Tillman signed an IRS Reporting Information form respecting the sale of the property that falsely listed her Social Security Number as 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. That number was assigned by the Social Security Administration to Vivian Oakley, who is Tillman's mother.

Mr. Shofner had no knowledge of the use of any false Social Security Number. Further, in paragraph 13, it states,

> Tillman failed to report the proceeds from the sale of the property on her 1996 Income Tax Return filed on June 30, 1997. However, the funds were reported on the return filed by Tillman's mother, Vivian Oakley.

Mr. Shofner likewise has no knowledge of what was on Ms. Tillman's Income Tax Return nor did he participate in the preparation of the return.

The balance of the Offense Conduct contained in the Presentence Report is accurate and adequately states the Offense Conduct.

## ADDITIONAL FACTORS FOR CONSIDERATION IN SENTENCING

As would be expected, by virtue of Mr. Shofner's criminal conduct, he will forfeit his license to practice law, and be precluded from the practice of law for some number of years to come.

From the outset, Mr. Shofner entered into plea negotiations with the United States Attorney's Office for the Northern District of Oklahoma, thereby precluding any necessity for trial preparation

4

by that office. Mr. Shofner's timely plea agreement and guilty plea serve to conserve judicial resources as well as the resources of the United States Attorney's Office. Though Mr. Shofner's conduct may not qualify for an Aberrant Behavior under § 5K2.20 of the Sentencing Guidelines, Mr. Shofner is certainly a first time offender with an exemplary record for the past 57 years other than the instant offense. Mr. Shofner's conduct represents a marked deviation from an otherwise law-abiding life. Further, Mr. Shofner has a continuous record of good employment and a record of prior good works. He enjoys a good reputation among his peers. He has the support of his children, and until the pressures of his current legal predicament, had the complete support of his wife. He and his wife currently have an amicable relationship devoting joint effort to the welfare of their children. Mr. Shofner has been an active participant in many community projects and has offered pro bono legal services in the past.

Though the instant conduct deprived the Bankruptcy Trustee of an asset of approximately $121,000, that sum exceeds Ms. Tillman's bankruptcy debts and liabilities and more importantly, Mr. Shofner's criminal conduct only resulted in a $600 fee paid to him by co-conspirator, Ms. Tillman.

Though Mr. Shofner is responsible for a restitution in this case, co-conspirator, Ms. Tillman, made full restitution prior to her sentencing. It is most appropriate that Ms. Tillman make the restitution as the instant crime was solely for her financial benefit, and not Mr. Shofner's. Restitution in this case serves to satisfy Ms. Tillman's creditors and not Mr. Shofner's.

Co-conspirator, Barbara Tillman, currently has, pending in state court, a legal malpractice action against Mr. Shofner seeking to recover hundreds of thousands of dollars (Ms. Tillman's last settlement demand was $710,000) as a result of the crime committed jointly by Ms. Tillman and Mr.

5

Shofner. Undoubtedly, in the event Mr. Shofner's sentence in the instant case is more severe than the sentence received by Ms. Tillman, the jury in the state civil action will be requested to consider that fact in assessing relative culpability, and in its determination of liability by Mr. Shofner in favor of Ms. Tillman.

## ARGUMENT FOR DOWNWARD DEPARTURE AND/OR LENIENCY IN SENTENCING

Mr. Shofner's long term exemplary employment history is an appropriate factor to consider in sentencing, and may be considered among other factors toward a downward departure. In U.S. v. Olbres, 99 F.3d 28, 36 (1st Cir. 1996), the Court found that the lower court abused its discretion when it concluded that a downward departure for loss of employment was "unavailable as a matter of law." Applying Koon v. United States, ___ U.S. ___, 116 S.Ct. 2035, 135 L.Ed. 2d 392 (1996), the Court explained that the Guidelines neither categorically exclude nor implicitly discourage such a departure based on loss of employment.

Since the *Koon* decision, the First Circuit has expressed a willingness to allow a sentencing court to grant downward departure based on a significant conservation of judicial resources. United States v. Detlefs, 123 F.3d 39, 43 (1st Cir. 1997). A defendant's guilty plea that results in a significant conservation of judicial resources may serve as a predicate for downward departure. The court stated,

> . . . it would be folly to conclude that a timely guilty plea which conserves judicial resources and thereby facilitates the administration of justice, must not be considered under any circumstances in the departure calculus.

*Id.* at 46.

6

According to application note 11 under § 2F 1.1 of the Sentencing Guidelines, "In a few instances, the loss determined under subsection (b)(1) may overstate the seriousness of the offense." In United States v. Stuart, 22 F.3d 76, 83-84 (3rd Cir. 1994), the court remanded the case indicating that a departure may be considered if the amount of loss overstates the culpability of the defendant. In that case, the defendant was paid $2,000 to deliver $129,000 in stolen bonds. In the instant case, though the amount of loss is stipulated to be between $70,000 and $120,000, Mr. Shofner's only financial interest in the entirety of the conspiracy was in the sum of $600 paid as a fee. Therefore, the loss seriously overstates the culpability of Mr. Shofner and should be considered as a grounds for downward departure.

The Court may consider a downward departure based on substantial voluntary restitution by a defendant. Indeed, this Court granted a downward departure to co-conspirator, Barbara Tillman, because she in fact made early and complete restitution in this matter. Because full restitution has been made by the conspirator that had the financial interest in the crime, Mr. Shofner should not be deprived of at least some consideration for the fact of full restitution even though it was made by the co-conspirator who was more properly responsible for restitution.

A November 1, 1994, addition to § 5K 2.0's commentary makes a limited allowance for a totality of circumstances departure:

> The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the 'heartland' cases covered by the Guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. However, the Commission believes that such cases will be extremely rare.

In <u>United States v. Bowser</u>, 941 F.2d 1019, 1024-25 (10th Cir. 1991), the Court held that a unique combination of factors, none of which standing alone may warrant departure, can provide a proper basis for departure. Other courts have likewise found that a combination of factors taken together may warrant a downward departure in a particular case, even if the individual circumstances taken in isolation do not warrant such a departure. See, <u>United States v. Cook</u>, 938 F.2d 149, 153 (9th Cir. 1991), <u>United States v. One Star</u>, 9 F.3d 60, 61 (8th Cir. 1993), <u>United States v. Parham</u>, 16 F.3d 844, 848 (8th Cir. 1994) and <u>United States v. Broderson</u>, 67 F.3d 452, 458-59 (2nd Cir. 1994). The Tenth Circuit has likewise used a similar analysis in the cases of <u>United States v. Pena</u>, 930 F.2d 1486, 1494-95 (10th Cir. 1991) and <u>United States v. Tsosie</u>, 14 F.3d 1438, 1441-42 (10th Cir. 1994).[1]

---

[1] Some courts following the Koon decision have upheld departures for outside the "heartland" cases where a combination of discrete factors was itself a sufficiently unique departure circumstance. *See United States v. Delgado*, ___ F. Supp. ___, 1998 U.S. Dist. Lexis 1921 at *5-7 (E.D. N.Y. Feb. 19, 1998)(individually and in combination, the factors of duress, aberrant behavior, diminutive size and meek demeanor, and defendant's exceptionally difficult life, created reason for departure); *United States v Martinez*, 978 F. Supp. 1442, 1997 U.S. Dist. Lexis 16454 at *25-30 (D.N.M. Oct. 22, 1997)(defendant's age, mental and emotional condition, employment record, family ties and employment related contributions remove the case from the "heartland"); *United States v. Dyce*, 975 F. Supp. 17, 22 (D.D.C. 1997)(holding that a "combination of factors" including family circumstances, post-offense rehabilitation and medical problems forced the basis for departure); *United States v. Griffiths*, 954 F. Supp. 738, 741 (D. Vt. 1997) (declaring that a "totality of the circumstances" provides a basis for downward departure in case involving defendant who is first time offender, young, attractive and extraordinarily sensitive man who might be victimized in prison); *United States v. Shaskey*, 939 F.Supp. 695, 696-700 (D. Neb. 1996)(apply *Koon* methodology to grant "outside the heartland" departure based on defendant's susceptibility to abuse in prison and extraordinary rehabilitative efforts). *But see, United States v. Ramos-Oseguera*, 120 F.3d 1028, 1040-41 (9th Cir. 1997)(remanding for separate findings on each of three potential departure grounds because the district court had collapsed the three grounds into only one departure), *cert. denied*, 118 S.Ct. 1094 (1998).

8

## CONCLUSION

For all of the above and foregoing reasons, combined with proper authority, the Defendant, Jim D. Shofner, requests a downward departure and leniency from this Court for purposes of sentencing. Though it might be inappropriate to claim that Mr. Shofner has "suffered enough," it should be noted that he has paid dearly for his isolated error and judgment and resulting criminal conduct. At the age of almost 58 years, Mr. Shofner will lose his ability to practice the only livelihood he knows. At the conclusion of his sentence, he will be a man beyond middle age with no financial stability, without his wife of 36 years, he will likely have been deprived of his freedom for a period of time and will forever be labeled (appropriately) a convicted felon. Whether or not Mr. Shofner is incarcerated for a significant period of time, his future is somewhat bleak and the punishment for his crime will be severe. With or without a sentence involving significant incarceration, this case will serve as a significant deterrent to crime for attorneys in this legal community. Given the relative culpability of co-conspirators, Barbara Tillman and Jim Shofner, it would be indeed unfair to place Ms. Tillman in a position to argue before a jury in a civil case, that Mr. Shofner is obviously more culpable than she is by virtue of the relative sentences handed down to each co-conspirator.

Therefore, Mr. Shofner respectfully requests that this Court depart from the strict confines of the Sentencing Guidelines and render a sentence that is certainly no more harsh than that rendered to co-conspirator, Barbara Tillman. Mr. Shofner takes full responsibility for his crime and does not plead that, "The devil made me do it." Nevertheless, reflecting the historical axiom that, "The punishment should fit the crime," Mr. Shofner's punishment should not exceed punishment rendered

9

to a co-conspirator who was the moving force in the conspiracy and the only one who stood to profit from the criminal conduct.

Respectfully submitted,

FELDMAN, FRANDEN, WOODARD & FARRIS

*/s/ Tony M. Graham*

TONY M. GRAHAM, OBA #3524
525 South Main, Suite 1000
Tulsa, OK 74103
918-583-7129 (phone)
918-584-3814 (fax)

**ATTORNEYS FOR DEFENDANT, JIM D. SHOFNER**

### CERTIFICATE OF DELIVERY

This is to certify that a full, true and correct copy of the above and foregoing was delivered this 5th day of September, 2001, to the following:

Scott W. Putney
Assistant United States Attorney
3460 U.S. Courthouse
333 West 4th Street
Tulsa, OK 74103

Larry Morris
Senior U.S. Probation Officer
Tulsa, OK 74103

*/s/ Tony M. Graham*

10